IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Timothy L. Harney and Patricia A. Muldoon, | ) ) | |
| *Plaintiffs,* | ) ) | |
| *-vs-* | ) | No. 07 CV 2814 |
| City of Chicago, Chicago Police Officer Joseph Midona, Jr., and Pamela DeVarela, | ) ) ) | *(Judge Lefkow)* |
| *Defendants.* | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS CITY OF CHICAGO AND MIDONA

Defendants City of Chicago and Midona have moved for summary judgment.[1] This motion should be denied for the reasons set out below.

## I.   PLAINTIFFS' FEDERAL CLAIMS

Plaintiffs assert Fourth Amendment claims against defendant Midona: Plaintiffs contend that Midona did not have probable cause to arrest and that he entered their dwelling without a warrant to make the arrests.[2] As part of his false arrest claim, plaintiff Harney complains about injuries he suffered from over tight handcuffs; Harney does not, however, raise a standalone excessive force claim based on the handcuffing, but seeks damages for the

---

   1   Plaintiffs advance state law claims against defendant DeVarela. Plaintiff and DeVarela agree that these claims should be heard in state court if the Court grants the pending motion for summary judgment.

   2   Plaintiffs do not assert any federal claim against the City of Chicago, which is joined as the potential indemnifier of defendant Midona.

handcuffing injuries as one of the "foreseeable consequences of the illegal arrest." *Herzog v. Village of Winnetka,* 309 F.3d 1041, 1044 (7th Cir. 2002).

Midona arrested both plaintiffs at their home on May 18, 2005. Midona arrested plaintiff Harney for the theft on March 9, 2005 of a tire valve cap on the complaint of Pamela DeVarela, a neighbor of plaintiffs.[3] Midona arrested plaintiff Harney for having caused damage on March 26, 2005 to an automobile, also on DeVarela's complaint.

## II.   THE DISPUTED MATERIAL FACTS

Defendants acknowledge (Def.Mem. 2), the rule that on defendants' motion for summary judgment, the Court must "resolve all genuine disputes as to any material facts in favor of [plaintiffs]." *Arnett v. Kennedy,* 416 U.S. 134, 139 (1974). "All facts and reasonable inferences must be construed in favor of the nonmoving party." *Chelios v. Heavener,* 520 F.3d 678, 685 (7th Cir. 2008).

Defendants fail to heed this rule. Plaintiffs show below that the facts, viewed in the light most favorable to plaintiffs, are quite different than those asserted by defendants.

### A. For Purposes of Defendants' Motion for Summary Judgment, Midona Did Not Meet with DeVarela on May 17, 2005

Midona contends that he met with DeVarela on May 17, 2005 and at that time obtained the information on which he relied in arresting plaintiffs

---

3 DeVarela subsequently claimed that the offense had been committed on March 6, 2005. (Additional Facts, par. 18.)

on May 18, 2005. (Defendants' Rule 56 Statements, pars. 8-15.) This claim is contrary to the sworn testimony given by DeVarela at the criminal trial of plaintiff Harney. (Plaintiffs' Exhibit 1.) There, DeVarela testified that she first complained to the police on May 18, 2005. (Additional Facts, par. 10.)

DeVarela's testimony about the date of her complaint to the police is more favorable to plaintiffs than that of Midona. This dispute cannot be resolved in advance of trial; for Midona's summary judgment motion, the Court must view the record in the light most favorable to plaintiffs, and decide the motion on the basis that DeVarela first complained to the police on May 18, 2005.

### B. For Purposes of Defendants' Motion for Summary Judgment, Midona Did Not View Any Video Before Arresting Plaintiffs

When Midona met with DeVarela on May 18, 2005, he took custody of *one* videotape and inventoried it. (Additional Facts, par. 11.)

Midona has not submitted a copy of the videotape he inventoried with his summary judgment motion: instead, Midona submits (as Defendants' Exhibits 8 and 9), copies of two videotapes that were produced by DeVarela in discovery in this case. (Additional Facts 18.)

Probable cause to arrest turns on the facts known to the arresting officer at the instant he (or she) made the arrest. *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). Midona did not view the two videotapes he has submitted with his summary judgment motion before arresting plaintiffs and he may not use them to show that he had probable cause to arrest.

The record in this case, viewed in the light most favorable to plaintiffs, also shows that Midona did not view *any* videotape before arresting plaintiffs.

First, Midona contradicted his present claim about what he saw on the video in sworn testimony he gave on June 1, 2005, when he testified before the grand jury which indicted plaintiff Muldoon. There, Midona answered "yes" to the prosecutor's question that the videotape "shows a person by the name of Patricia Muldoon spray painting the paint on victim's car and that you can also hear the sounds of that as well." (Additional Facts, par. 17.)

Second, Midona's claim about what he saw on the video concerning plaintiff Harney is contradicted by the "full" videotape, produced in discovery in this case and submitted by defendants as Defendants' Exhibit 8.

Midona claims that before arresting Harney, he viewed a videotape showing "Mr. Harney removing the valve off of her tire, letting out all the air in her vehicle's tire, and then putting that cap on his own car." (Additional Facts 19.) The entire video, however, "shows a man working on his tire going over doing something or looking at a tire." (Additional Facts, par. 15.)

The video shows Harney kneeling next to a fully inflated tire for about two seconds. (Additional Facts, par. 28.) It takes much longer than two seconds to let the air out of a tire by pressing on the valve that is underneath the valve cap. (Additional Facts, par. 27.)

The video does not show a valve cap. (Additional Facts, par. 25.) Nor does the video show anyone removing a valve cap from a tire. (Additional Facts, par. 26.)

Midona claims that when he viewed the video before arresting Muldoon, he saw images of her "using some kind of instrument and scratching the back of [DeVarela's] vehicle." (Additional Facts, par. 32.) Midona asserts that he corroborated this when he examined the vehicle and saw scratches "on the metal part of the trunk lid." (Additional Facts, par. 35.) This, however, is not where the car was damaged by the alleged keying: DeVarela testified at Muldoon's state criminal trial that the keying resulted in "a new scratch mark on the back bumper by the trunk." (Additional Facts, par. 36.) Midona admitted that he never looked at the bumper. (Additional Facts, par. 22.)

For these reasons, the Court should assume, for purposes of Midona's summary judgment motion, that he did not view any videotape before arresting plaintiffs.

### C. Midona Did Not Have Signed Complaints

Midona seeks to justify the arrest of each plaintiff because, *inter alia,* he had "a signed criminal complaint." (Def.Mem. 6-7.) The facts do not support this claim.

DeVarela signed criminal complaints at her home on May 18, 2005. (Defendants' Rule 56 Statement, par. 32.) None of the officers who were

present at DeVarela's filled in the narrative portion of the complaint. (Defendants' Rule 56 Statement, response to par. 32[b].) It is obvious that someone completed the narrative portion; the inescapable conclusion is that the narrative was completed by another officer after plaintiffs had been arrested and after DeVarela has signed a blank form.

### D. Kourakis Did Not Communicate Any Facts to Midona

Midona also seeks to justify the arrest of each plaintiff on the basis of "Detective Kourakis' determination of probable cause." (Def.Mem. 6, 7.) This argument is meritless as a matter of law.[4] In addition, this argument is belied by the record.

Detective Kourakis claims that he concluded there was probable cause to arrest after watching a videotape. (Defendants' Rule 56 Statement, par. 24.) The videotape Kourakis claims to have viewed had a "time stamp" that indicated when the video had been recorded. (Response to Defendants' Rule 56 Statement, par. 25(a).) None of the videotapes produced in this case has a timestamp. Kourakis relied on an imaginary tape and his assessment of probable cause is thus not entitled to any weight.

---

4 The "collective knowledge" doctrine applies to facts known to "the officer directing the arrest, or the collective knowledge of the agency he works for." *Tangwall v. Stuckey,* 135 F.3d 510, 517 (7th Cir. 1998). Defendant here seeks to apply this doctrine to opinion.

### E. Plaintiffs Did Not Consent to the Warrantless Entry of Their Home

The law is now clearly established that police officers may not enter a home to make an arrest without a warrant: ""In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York,* 445 U.S. 573 (1980).

Midona admitted at his deposition that arresting plaintiffs "wasn't a pressing matter," (Additional Facts par. 39), and also admitted that he did not have a search warrant to enter plaintiffs' dwelling. (Additional Facts par. 40.)

Midona relies on the testimony of Officer Kourakis to support his assertion that plaintiff Harney "let the officers into the home." (Defendants Rule 56.1 Statement, par. 51.)

Plaintiff Harney testified to the contrary at his deposition, stating that the officers crossed the curtilage of his property before speaking to Harney (Additional Facts par. 41), and that he did not invite them inside the condo unit. Additional Facts par. 43.

For the purposes of defendants' summary judgment motion, the Court must therefore reject defendants' claim that plaintiffs invited the officers into their home, and decide the warrantless home entry question on the view of

the facts most favorable to plaintiffs, i.e., that defendant Midona (as well as the other officers) entered without consent.

### III. MIDONA DID NOT HAVE PROBABLE CAUSE, OR "ARGUABLE PROBABLE CAUSE" TO ARREST PLAINTIFF HARNEY OR PLAINTIFF MULDOON

"To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003), quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996). These historical facts in this case show that Midona did not probable cause (or, for the qualified immunity defense, "arguable probable cause") to arrest either plaintiff.

#### A. Plaintiff Harney

On May 18, 2005, DeVarela told Midona that two months before, on March 9, 2005, plaintiff Harney had removed the tire valve cap from a tire on her car, deflated that tire, and then put the valve cap on a tire on his car. (Additional Facts, par. 10.)

Defendants assert that this belated report of the theft of a valve cap provided Midona with at least "arguable probable cause" to arrest Harney. (Def.Mem. 6, 13-14.) We disagree.

Probable cause turns on the "facts and circumstances known to the officer [that] warrant a prudent man in believing that an offense has been

-8-

committed", *Henry v. United States,* 361 U.S. 98, 102 (1959). Plaintiffs acknowledge that in many cases, the Seventh Circuit has concluded that the complaint of a single witness is enough to establish probable cause to arrest. *See, e.g., Beauchamp v. City of Noblesville,,* 320 F.3d 733 (7th Cir. 2003). Each time the Court of Appeals has applied this rule, however, it has carefully analyzed the specific facts, to determine whether it was reasonable for the officer to rely on the complaint of a single witness.

For example, in *Gerald M. v. Connelly,* 858 F.2d 378 (7th Cir. 1988), the Court of Appeals held that a report from a ten year old established probable cause to arrest two children for the alleged theft of a bicycle. The Court reached this conclusion after finding that there was no evidence from which it could conclude that the ten year old complainant "was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection." *Id.* at 381. The same is not true in this case.

DeVarela's claim that plaintiff Harney somehow deflated the tire when he kneeled for several seconds beside the passenger side rear tire is inconsistent with objective reality: as defendant Midona conceded, a tire cannot be deflated in two seconds. (Additional Facts, par. 27.) A reasonable police officer would not have unquestioningly accepted DeVarela's claim that two months ago, plaintiff Harney took the cap off of her tire and let all the air out,

A reasonable police officer would also have been concerned about the two months that elapsed between the alleged deflating incident and the date that DeVarela reported it to the police. Unlike *Woods v. City of Chicago,* 234 F.3d 979 (7th Cir. 2000), the record does not contain "an apparently credible explanation for why [DeVarela] reported the offense when [s]he did." *Id.* at 997.

In this case, Midona did not ask DeVarela if she had made a police report about theft of the valve cap and deflating of the tire at the time of the incident. (Additional Facts, par. 20.) Midona stated that this question "never entered my mind." *Id.* This empty head is not the action of a reasonable police officer.

Midona also knew about complaints and cross-complaints between DeVarela and the plaintiffs.

Midona met DeVarela for the first time on April 17, 2004 (Midona Dep. 18:18-19), when he was dispatched to her house to write a report about damage to a mirror on a vehicle. (Additional Facts, par. 1.) DeVarela told Midona that her neighbors (plaintiffs in this action), had broken the mirror, *id.,* and that she had had problems with her neighbors in the past. *Id.* DeVarela did not have any evidence about the identity of the offender, and Midona prepared a police report for DeVarela stating that damage to property had been caused by an "unknown offender." (Additional Facts, par. 3.)

At 9:53 a.m. on September 23, 2004 DeVarela telephoned Midona on his personal cell phone. (Additional Facts, par. 5.) The two spoke for about 14 minutes. *Id*. Later that day, Midona prepared a police report concerning an alleged battery to DeVarela that had occurred two days before. Additional Facts, par. 6. Midona wrote in that report that DeVarela had been "chased up the stairs by her neighbors [plaintiffs in this action] and pushed as she was trying to get into her door." (Additional Facts, par. 7.) When he prepared this report, Midona knew that DeVarela wanted the police report prepared because plaintiff Harney had reported that he had been bitten by DeVarela's dog on September 21, 2004. (Additional Facts, par. 4, 8.)

DeVarela's retaliatory battery complaint of September 23rd provides evidence that DeVarela acted out of animus towards plaintiffs, and distinguishes this case from *Gerald M. v. Connelly,* 858 F.2d 378, 381 (7th Cir. 1988).

When "information from or about a person claiming to be the victim of crime would lead a reasonable officer to be suspicious," the officer has a duty to investigate. *Hebron v. Touhy,* 18 F.3d 421, 423 (7th Cir. 1994). In this case, Midona received "a report of questionable reliability." *Id.* There was no evidence to corroborate DeVarela's tale of the theft of a tire valve cap two months before and there was no explanation for her delay in reporting the alleged theft. Under these circumstances, a reasonable officer would, at the very least, have asked plaintiff Harney for his side of the story before placing

him under arrest. This Midona failed to do. (Additional Facts, par. 30.) Similarly, a reasonable officer would have determined whether Harney had an alibi for March 9, 2005, the date of the alleged theft. This Midona also failed to do. (Additional Facts, par. 31.)

Defendants mistakenly seek to compare the probable cause question in this case to *Spiegel v. Cortese,* 196 F.3d 717 (7th Cir. 1999). There, the claim of battery made by the alleged victim was corroborated by a visible bruise. *Id.* at 724. Moreover, in *Spiegel,* the "facts do not render [the complainant's] report incredible as a matter of law." The same is not true in this case.

Defendant cannot argue that the videotape corroborated DeVarela's report of the theft of a valve cap because, as shown above, on Midona's motion for summary judgment, the Court must assume that Midona did not see the video tape. In addition, nothing on the videotape supports the claimed theft of a valve cap. Finally, DeVarela's report of tire deflation is incredible as a matter of science and a matter of law, because a tire cannot be deflated by pressing on a tire valve for two seconds.

DeVarela was not "a guard at a supermarket," as in *Gramenos v. Jewel Co.,* 797 F.2d 432, 439 (7th Cir. 1986). It was not reasonable for Midona to arrest Harney on DeVarela's uncorroborated, stale complaint, when Midona knew about problems between DeVarela and plaintiffs, and when Midona declined to conduct any investigation whatsoever. Midona is not

entitled to summary judgment on plaintiff Harney's false arrest claim. The same is true for the false arrest claim of plaintiff Muldoon.

### B. Plaintiff Muldoon

Midona seeks to justify his arrest of plaintiff Muldoon by relying on the same arguments he advanced to justify the arrest of plaintiff Harney plus "his personal observation of the damage to the vehicle." (Def.Mem. 7.) This claim of "personal observation" is wholly without merit.

Midona claims that when he examined DeVarela's vehicle, he saw scratches that had been made "on the metal part of the trunk lid," (Additional Facts, par. 35), i.e., the upper portion. *Id.* He did not look at the bumper. *Id*

DeVarela, however, claims that the damage from the "keying" consisted of "a new scratch mark on the back bumper by the trunk." (Additional Facts, par. 36.)

Midona's observation of scratches which DeVarela has never claimed were caused by plaintiff Muldoon does not establish probable cause to arrest.

## IV.   WARRANTLESS ENTRY INTO THE HOME

Defendants claim that it was lawful to cross the curtilage of plaintiffs' property to arrest plaintiffs, even though the arrests were "a pressing matter." Defendants peg their argument on an overly broad reading of *United States v. Berkowitz,* 927 F.2d 1376 (7th Cir. 1991). (Def.Mem. 9.) The Court of Appeals explained (and limited *Berkowitz)* in *Sparing v. Village of Olympia Fields,* 266 F.3d 684 (7th Cir. 2001):

*Berkowitz,* however, did not overturn longstanding Fourth Amendment precedent that absent exigent circumstances, police without a warrant must obtain an individual's valid and voluntary consent before entering the home to effectuate or complete an arrest. (citations omitted) As we have said, *Berkowitz* only endorsed as reasonable under the Fourth Amendment, a slight entry into the home to complete an arrest announced outside the home when the individual acquiesced to the entry while standing fractions of an inch behind the threshold of her home with the door open. *See Berkowitz,* 927 F.2d at 1386-87.

In this case, as in *Sparing,* plaintiff Harney stood inside his property while the officers crossed the curtilage without consent. Additional Facts par. 41. Plaintiff Harney did not invite the officers into the condo. Additional Facts par. 42-44.

Midona believes that if he has a signed complaint charging a misdemeanor offense, he may lawfully enter a dwelling without a warrant to make an arrest of the person named in that misdemeanor complaint. (Additional Facts, par. 47.) This novel view of the Fourth Amendment explains Midona's unlawful behavior; defendants' attempt to justify the warrantless entry to make the non-emergency arrests is without merit and should be rejected.

## V.    CONCLUSION

For the reasons above stated, the Court should deny defendants'

motion for summary judgment.


.                                              Respectfully submitted,


/s/ Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC No. 830399
200 S. Michigan Ave, Ste 1240
Chicago, IL 60604
(312) 427-3200
Attorney for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of May, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Greg Adamski, Esq., Adamski & Conti, 100 N LaSalle St, Ste 1720, Chicago, IL 60602, and James T. McGovern, Ass't Corp Cnsl, 30 N LaSalle St., Ste 1720, Chicago, IL 60602, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

/s/ Kenneth N. Flaxman

_____

Kenneth N. Flaxman
ARDC Number 08830399
200 S Michigan Ave, Ste 1240
Chicago, IL 60604-2430
(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com (email)