**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY L. HARNEY and | ) | |
| PATRICIA A. MULDOON | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07 CV 2814 |
| v. | ) | |
| | ) | Judge Lefkow |
| CITY OF CHICAGO and Chicago Police | ) | |
| Officer JOSEPH MIDONA, JR., and | ) | |
| PAMELA DEVARELA. | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM FOR SUMMARY JUDGMENT**

Defendants, City of Chicago ("City") and Chicago Police Officer Joseph Midona ("Officer Midona"), submit the following reply memorandum in support of their motion for summary judgment. Defendants reply to the Plaintiffs' response as follows:

**I.      PLAINTIFFS' FEDERAL CLAIMS**

Plaintiffs assert Fourth Amendment claims against Officer Midona and contend (1) that Officer Midona did not have probable cause to arrest Harney and Muldoon, and (2) that Officer Midona entered plaintiffs' dwelling without a warrant to make the arrests. As Plaintiffs clarify in their response, there is no standalone claim for excessive force. Defendants now seek summary judgment.

**II.      THERE IS NO ISSUE OF  MATERIAL FACT THAT WOULD JUSTIFY A
       DENIAL OF SUMMARY JUDGMENT**

**A.      It is Undisputed that Officer Midona Met with DeVarela on May 17, 2005**

Plaintiffs have agreed that Officer Midona met with DeVarela on May 17, 2005, and therefore, Plaintiffs' assertion that they did not meet on May 17, 2005 is moot.

Defendants' Statement of Fact #8, and Plaintiffs' response, reads as follows:

> The next day, May 17, 2005, Officer Midona met with DeVarela at her husband's residence on Cleveland Street at approximately 2pm. (Midona Dep. Ex. 2 at 38-39, lines 9-3; and DeVarela Dep. Ex. 3 at 70, lines 13-16).
> **RESPONSE**: Agree.

(Defs' Statement of Fact, par. 8).  Therefore, this agreement makes Plaintiffs' assertion moot.

Additionally, Plaintiffs attempt to manipulate and mischaracterize the record in an attempt to manufacture a dispute that is not supported by the record.  Throughout Plaintiffs' responses to Defendants' Statement of Facts, and in this section as well, Plaintiffs rely upon their misguided and self-serving interpretation of a single question and answer that does not comport with the contention that DeVarela did not complain of Harney and Muldoon's criminal activity prior to May 18, 2005.

The actual question cited asked: "Drawing your attention to May 18, 2005, did you have an occasion to call the 18th district police department?"  (Muldoon Trial Transcript, Pl.Ex. 1, at 27: 14-17).  The question only referred to May 18th and asked only about calls placed to the 18th District.  The question and answer does not pertain to any communication on May 16, 2005 or May 17, 2005 and/or calls made directly to Officer Midona.  Further, the next question asked "And why did you wait from March 26th, 2005, the day that the damage was sustained, to May 18th, 2005, to call the police?"   (Muldoon Trial Transcript, Pl.Ex. 1, at 27: 18-20).  This question is a direct follow-up to the prior question pertaining to "Drawing your attention to May 18th..." and "you...call[ed] the 18th district..."  This question in no way, as Plaintiffs attempt to argue, creates the fact that the first time DeVarela called the police to complain about damage was on May 18, 2005.

Further, it is fact that DeVarela called Officer Midona on May 16, 2005 to complain of damage and that they met on May 17, 2005 to view the evidence; these facts are supported by the following:  Plaintiffs agree that on May 16, 2005 DeVarela called Officer Midona (Defs Statement, par. 6); Plaintiffs agree that on May 17, 2005 Officer Midona met with DeVarela (Defs Statement, par. 8); Plaintiffs agree that on May 17, 2005 Officer Midona was on-duty and in uniform (Defs Statement, par. 9); and Plaintiffs agree that on May 17, 2005 Midona met DeVarela with his sergeant (Defs Statement, par. 9).  Plaintiffs' agreement that an on-duty and uniformed Officer Midona was with a sergeant when he met with DeVarela on May 17, 2005 directly contradicts their claim that DeVarela's first complained to police on May 18, 2005.

There is no material issue of fact that DeVarela first complained to the police prior to the arrest date of May 18, 2005.  Further, there is no issue of material fact that on May 17, 2005

2

DeVarela met with Officer Midona and his sergeant, while on-duty and in uniform, to complain about Harney taking a valve cap from her vehicle and Muldoon keying her vehicle as shown on the videotape she showed Officer Midona and as evidenced by the damage on the vehicle. (Defs' Statements, paras. 10-14).

### B.    There is No Issue of Material Fact that Officer Midona Viewed the Video Before Arresting Plaintiffs

On May 17, 2005 Officer Midona met with DeVarela and viewed a videotape of Harney taking a valve cap and Muldoon keying DeVarela's vehicle. (Defs Statement, paras. 10-13). There is no issue of material fact that the videotape DeVarela produced in discovery contained the same images of Harney and Muldoon as the video Officer Midona viewed on May 17th and detectives viewed on May 18th and Officer Midona inventoried on May 18th and Detective Kourakis viewed at Muldoon's criminal trial in November 2005.  On May 17, 2005 Officer Midona met with DeVarela and viewed the videotape at issue.  (Dets Statement, paras. 10-13). On May 18, 2005 Detective Kourakis viewed the videotape during his investigation. (Defs Statement, paras. 24-27).  Plaintiffs were arrested on May 18, 2005 after Detective Kourakis viewed the videotape.  (Reply to Defs Statement, par. 24 cited at Muldoon Trial Transcript, Pl.Ex. 1, 69: 11-14). Officer Midona inventoried the videotape on May 18, 2005 and it was subsequently provided to the prosecution.  (Defs Statement, par. 24 and Property Inventory, Def. Ex. 11).  On November 28, 2005, the videotape was in the possession of the State's Attorney's Office and was used as evidence in Muldoon's criminal trial.  (Reply to Defs Statement, par. 24 cited at Muldoon Trial Transcript, Pl.Ex. 1, 69: 7-10).  At the trial, Detective Kourakis viewed a videotape and testified that it was the videotape he observed on May 18, 2005.  (Id.)  A copy of the video was produced by DeVarela in discovery in this case.  (Plts Statement, par. 18). Therefore, the video viewed by Officer Midona contained the same images as the video inventoried and given as evidence to the State's Attorney's Office for the Muldoon criminal trial. DeVarela then produced copies of this video pursuant to discovery.  There is no evidence in the record to support Plaintiffs' unsubstantiated and speculative assertion that DeVarela violated the rules of discovery and fraudulently produced anything other than a true and accurate copy of the videos at issue.

The record is clear that Officer Midona viewed a videotape on May 17, 2005 that showed

Harney stealing and Muldoon damaging the car; the record is clear that Detective Kourakis viewed the video on May 18, 2005 in furtherance of Officer Midona's investigation. These viewings occurred prior to the arrests, and therefore, Officer Midona had the knowledge of the video's content prior to the arrest.

As for the supposed contradiction of Officer Midona's June 1, 2005 testimony — Plaintiffs ignore the following testimony from the same line of questioning: " 'Did you learn that on May 26th, 2005 her car was scraped by a key?'  Answer: 'Yes.' " (Response to Plts Statement, par. 17 citing Midona Grand Jury Testimony, Pl.Ex. 10 at 4).  Officer Midona remembered testifying about Muldoon scraping the paint on the victim's car and he did not say "spray painting." (Id., citing Midona Dep., Pl.Ex. 6, 149:23 - 151:6).

Plaintiffs' argue that questions of what the videotape actually shows (whether a valve cap is actually seen, the time it actually takes to deflate a tire, etc.) proves there was no probable cause to arrest is inherently faulty.  Hindsight does not influence whether the video supported the statements of the complaining witness at the time of the determination of probable cause.  In essence, Plaintiffs attempt to say "The video doesn't prove I did it" in an attempt "show" there was no probable cause.  This line of reasoning in challenging the existence of probable cause should be disregarded.

As for Plaintiffs' attempt to create an issue of fact by arguing that the full videotape of Harney shows him changing a tire: yes it does; and it also shows him kneeling next to DeVarela's car tire and moving his arm and stealing a valve cap. (Def. Ex. 8).  This portion of the video was evidence that supported Officer Midona's determination of probable cause that a theft occurred — supporting DeVarela's complaint of theft and damage to her car.

There is no material issue of fact that Officer Midona viewed the video on May 17, 2005. Officer Midona had knowledge of the video's content, and he used that information to determine that there was probable cause to arrest both Plaintiffs, prior to their arrests.

### C.     There is No Issue of Material Fact that DeVarela Signed Criminal Complaints Prior to the Arrests

Plaintiffs agree that DeVarela signed criminal complaints against both Harney and Muldoon at her home on May 18, 2005.  (Defs Statement, paras.32-33).  Further, DeVarela

testified (and Plaintiffs agreed) that the narrative on the Harney complaint is accurate. (Defs Statement, par. 32). Plaintiffs' assertion that DeVarela signed blank complaints is not supported by the record and is defeated by their own agreements. (Defs. Statement, paras. 31-33). Additionally, Officer Midona testified that the arrests occurred after DeVarela signed the complaints and DeVarela testified that there was writing on the complaint when it was signed (Reply to Defs. Statement, par. 38, citing Midona Dep., Pl.Ex. 6, 75: 15-17 and Midona Dep. Pl.Ex. 6, 25:8-23 and DeVarela Dep., Pl.Ex. 2, 115: 4-6).

Plaintiffs only provide speculation and groundless assertions in their attempt to create an issue of fact on this issue; the record confirms that there is no issue of material fact that DeVarela signed criminal complaints against both Harney and Muldoon prior to the arrests.

### D. There is No Issue of Material Fact that Detective Kourakis Communicated Facts to Officer Midona

The claim in section D is based on Plaintiffs' mischaracterization of Detective Kourakis's testimony. First, Deteceive Kourakis viewed the same tape that was subsequently provided to the prosecution — he testified as such at Muldoon's criminal trial. (Defs. Statement, par. 24). Second, Detective Kourakis never said that he watched a tape with a time stamp; instead, he answered the following question with the following answer: Question: "Was there anything on the tape that you watched which indicated when it was made?" Answer: "I believe there was time stamp. I don't remember it." (Id.) Plaintiffs attempt to ignore the "I don't remember it" portion of Kourakis's testimony to establish that *it did in fact* have a time stamp. There is no affirmative evidence or testimony establishing that the viewed video had a time stamp.

Additionally, the record shows that Detective Kourakis did communicate with Officer Midona about his investigation and determination of probable cause. Detective Kourakis went with Officer Midona to make the arrests after his investigation was completed. (Defs. Statement, paras. 21-22, 26, 29, and 37). Plaintiffs agreed to the following: Detectives Kourakis and Ekerman met with DeVarela on May 18, 2005; DeVarela told the Detectives about damage to her property; DeVarala and the Detectives viewed the video together and she informed them that the people in the video were Harney and Muldoon; Detective Kourakis inspected DeVarela's vehicle; Detective Kourakis went with Officer Midona to the home of Harney and Muldoon to

assist in the arrests.  (Defs. Statement, paras. 21-22, 26, 29, and 37).  The record, and Plaintiffs'
agreements, make it clear that Detective Kourakis communicated his determination of the
existence of probable cause to Officer Midona because he participated and assisted in the
investigation and subsequent arrests.

> **E.     There is No Issue of Material Fact that There Was Consent for the Officers
>            to Enter the Home**

Plaintiffs rely on the notion that the officers crossed the curtilage of "his" property before
speaking to Harney. This assertion is wrong and defeated by Harney's own testimony.
Plaintiffs agreed that DeVarela resided in the same three-unit vertical condominium as Harney
and Muldoon.  (Defs. Statement, par. 6).   Plaintiffs agreed that Harney first met the officers
while on the *front walkway* of the condominium and that Officer Midona told him that he had
come to arrest him.  (Defs. Statement, paras. 42-43).  Plaintiffs agreed that *"the very first
thing"* Officer Midona said to him was "I've come here to arrest you."  (Defs. Statement, par. 44).
And, Plaintiffs agreed that while on the front walkway of the condominium, Harney was told by
Officer Midona that there was a tape of Harney letting a air out of the tire of DeVarela's car.
(Defs. Statement, par. 45).

The record, and Plaintiffs' agreements, establish that the front walkway is not "his"
property but the property of the three-unit condominium; Harney does not own the 3-unit
condominium, and therefore, the condo property is not "his." Further, the record and Plaintiffs'
agreements show there is no issue of material fact that Harney was notified of his arrest while
outside of his home.  The officers did not cross the curtilage of Harney's home during the arrest
as the arrest occurred outside on the walkway.

As for entry into the house:  Plaintiffs agree that the officers, while outside, told Harney
that they wanted to talk to Muldoon about keying DeVarela's car.  (Defs. Statement, par. 46).
Officer Midona informed Harney that his wife was also under arrest for damageing DeVarela's
vehicle.  (Defs. Statement, par. 47).  Knowing he was under arrest (as shown by Plaintiffs'
agreement to Defs. Statement, paras 43-44) and knowing that the officers wanted to talk to his
wife and that she was going to be arrested (Defs. Statement, paras. 46-47) Harney went inside
and the officer followed him (Defs. Statement, par. 50).  Therefore, Harney walked from the

front gate to the front door while being followed by officers that previously placed him under arrest and told him his wife was going to be arrested.  (Defs. Statement, paras. 43, 44, 46, 47, and 50).  This supports Detecitive Kourakis's testimony that Harney let the officer into the home. (Defs. Statement, par. 51).

There is no material issue of fact that Harney was not arrested in his home as he was arrested outside of his home on the walkway by the gate of the 3-unit condominium.

There is no material issue of fact that the officers had implied consent to enter the home when Harney allowed the officers to follow him into his home while knowing he was under arrest and knowing that the officers were going to arrest his wife, Muldoon.

## III.    THERE WAS PROBABLE CAUSE TO ARREST HARNEY AND MULDOON

Plaintiffs are attempting to create an issue of fact where none exists — they respond to both arrests by suggesting the only evidence of probable cause rested on the verbal complaint of an untrustworthy, incredible, and vindictive complainant.  The record is filled with facts and evidence that probable cause existed and that Officer Midona was reasonable to believe that probable cause existed.

### A.    There is No Issue of Material Fact that Probable Cause Existed to Arrest Harney

Plaintiffs respond to the issue of probable cause by correctly stating that probable cause turns on the "facts and circumstances known to the officer [that] warrant a prudent man in believing that an offense has been committed."  Henry v. United States, 361 U.S.98 102 (1959).

There is no issue of material fact that Officer Midona was prudent in his belief that a crime had been committed and that probable cause existed for the Harney arrest.  Probable cause existed because the following occurred and was known to Officer Midona prior to the arrest:

1– On May 16, 2005 Officer Midona talked with the complaining witness and was told of the theft (Defs Statement, par. 7);

2– On May 17, 2005, Officer Midona and his sergeant met with the complainant (Defs Statement, paras. 8-9);

3– Officer Midona watched a video with his sergeant that showed a man doing something to the complainant's car tire (Defs. Statement, par. 10);

7

4– Officer Midona learned from the complainant that the person in the video was Harney (Defs. Statement, par. 10-12);

5– Officer Midona learned from the complainant that Harney stole a valve cap from her car (Defs. Statement, par. 13 and Reply);

6– Officer Midona contacted detectives to conduct an investigation of the theft of the valve cap (Defs. Statement, par. 19);

7– The complainant signed a criminal complaint that accurately described the details of the alleged theft (Defs. Statement, par. 32); and

8– The detective that assisted in the investigation of the theft and determined that probable cause existed accompanied Officer Midona to make the arrest of Harney (Dets Statement, par 37).

The above eight elements were part of the two-day investigation conducted by Officer Midona and/or were known to Officer Midona and all occurred prior to the arrest of Harney. (Defs. Statement, par. 38). In short, Officer Midona viewed video evidence of a crime, obtained verbal statements and a signed complaint from the complainant/victim, and relied on the additional investigation and input from Detective Kourakis (and Detective Ekerman and his sergeant) to determine that probable cause existed.

Additionally, the totality of the circumstances surrounding the investigation included Officer Midona obtaining the assistance of his sergeant and two detectives to conduct their own investigation as well as taking over two-days to conduct his investigation before making the arrest. This further shows he was prudent in his work and that his belief that probable cause existed was reasonable.

Plaintiffs attempt to argue (in citing Hebron) that Officer Midona had a duty to investigate because he received "a report of questionable reliability." They state this duty to investigate applied because "there was no evidence to corroborate DeVarela's tale of the theft ... and there was no explanation for her delay..." This statement conveniently ignores the evidence of the videotape images that fully support, especially for purposes of probable cause, a complaint that a theft had been committed. Additionally, Plaintiffs ignore the testimony of Renate Pluharik who was with the detectives during their investigation of the matter and her assertion that the

8

individuals on the tape were Harney and Muldoon.  (Deft. Statement, paras. 23, 28).  They further ignore that Officer Midona had the assistance of his sergeant and two detectives during his investigation and determination of probable cause.  (Deft. Statement, par. 9, 10, 12, 19, 21, 24-27, 29, 30-32, 34-37).

    **B.**    **There is No Issue of Material Fact that Probable Cause Existed to Arrest Muldoon**

There is not issue of material fact that Officer Midona was prudent in his belief that a crime had been committed and that probable cause existed for an arrest of Muldoon after he did the following:

    1– On May 16, 2005 Officer Midona talked with the complaining witness and was told of the theft (Defs Statement, par. 7);

    2– On May 17, 2005, Officer Midona and his sergeant met with the complainant (Defs Statement, paras. 8-9);

    3– Officer Midona watched a video with his sergeant that showed a woman damaging the complainant's vehicle (Defs. Statement, par. 10);

    4– Officer Midona learned from the complainant that the woman in the video was Muldoon (Defs. Statement, par. 10-12);

    5– Officer Midona looked at the damage to the rear of the vehicle (Deft Statement, par. 14);

    6– Officer Midona was contacted by the complainant and told that she had obtained an estimate of damage to her vehicle and then subsequently reviewed that estimate (Defs. Statement, par. 17 and 38);

    7– Officer Midona contacted detectives to conduct an investigation of the keying and damage to the vehicle as depicted on the video (Defs. Statement, par. 19);

    8– The complainant signed a criminal complaint regarding the damage to her vehicle (Defs. Statement, par. 33); and

    9– The detective that investigated the claim of damage to property and that determined probable cause existed accompanied Officer Midona to make the arrest of Muldoon (Defs Statement, par 37).

The above stated nine elements were part of the two-day investigation conducted by Officer Midona and/or were known to Officer Midona and all occurred prior to the arrest of Muldoon.  (Defs. Statement, par. 38).  In short, Officer Midona viewed video evidence of a crime, viewed damage to the vehicle, obtained verbal statements and a signed complaint from the complainant/victim, and relied on the additional investigation and input from Detective Kourakis (and Detective Ekerman and his sergeant) to determine that probable cause existed.

Additionally, the totality of the circumstances surrounding the investigation included Officer Midona obtaining the assistance of his sergeant and two detectives to conduct their own investigation as well as taking over two-days to conduct his investigation before making the arrest.  This further shows he was prudent in his work and that his belief that probable cause existed was reasonable.

## IV.     BOTH ARRESTS WERE VALID WARRANTLESS ARRESTS

There is no basis for Plaintiffs' allegation that Officer Midona wrongfully arrested plaintiffs in their home without an arrest warrant.  The uncontested facts establish that there is no issue of material fact that Harney was arrested outside of his home.  There is no issue of material fact that Officer Midona entered the home to effectuate the arrest of Muldoon after Harney consented to the officers' entry.

### A.     There is No Issue of Material Fact that Harney's Arrest Occurred Outside the Home

Plaintiffs agreed that DeVarela resided in the same three-unit vertical condominium as Harney and Muldoon.  (Defs. Statement, par. 6).  Plaintiffs agreed that Harney had a discussion with the officers while on the *front walkway* of the condominium and Officer Midona told him that he had come to arrest him.  (Defs. Statement, par. 43).  Plaintiffs agreed that *"the very first thing"* Officer Midona said to him was "I've come here to arrest you."  (Defs. Statement, par. 44).  Plaintiffs agreed that while on the front walkway of the condominium, Harney was told by Officer Midona that there was a tape of Harney letting a air out of the tire of DeVarela's car.  (Defs. Statement, par. 45).

Plaintiffs attempt to apply the facts of <u>Sparing</u> to this case; however, they wrongly assert that Harney stood on "his property while the officers crossed the curtilage without consent."  As

previously established, Harney was informed of his arrest while on the walkway by the front gate of the condominium property.  (Defs. Statement, par. 43-44).  This was not a situation, like Sparing, where an individual answered the door, while standing inside their home, and arresting officers then came in past the curtilage to effectuate the arrest.  Sparing, 266 F. 3d 684.

Harney, as admitted in his own testimony, was informed of his arrest while standing by the front gate on the walkway outside of his home.  (Defts. Statement, paras. 42-46.)  Harney then went inside his home after Officer Midona told Harney that he was under arrest.  (Deft. Statement, par. 49).  An arrest in a public place, even without a warrant, is legal so long as probable cause exists for the arrest.  See U.S. v. Berkowitz, 927 F.2d 1376 at 1386 (1991).  There is no issue of material fact that the first thing Officer Midona told Harney as they both stood outside was that Harney was under arrest; and no issue of material fact that the arrest occurred in public and not in Harney's home.

**B.     There is No Issue of Material Fact That Harney Submitted to the Officers'
Authority and Consented to the Entry**

The uncontested facts establish that Officer Midona had consent to enter the home and such entry was made only after Harney was placed under arrest and informed that his wife, too, was under arrest.

As stated in Berkowitz, Courts have generally upheld arrests "where the police go to a person's home without a warrant, knock on the door, announce from outside the home the person is under arrest when he opens the door to answer, and the person acquiesces to the arrest." See Berkowitz, 927 F.2d at 1386.  Moreover, there is no violation of a reasonable privacy expectation if the arrestee submits to the officer's authority to arrest before entering the home.  Id.  When the police assert their authority to arrest a person from outside the home, they have not breached the person's privacy interest in the home. Id. at 1387.

Here, Officer Midona unquestionably announced "I've come here to arrest you" from outside the home as Harney was standing at the front gate. (Deft. Statement, paras. 42-44).  At that point, Officer Midona informed Harney that his wife, too, was under arrest and the officers wanted to talk to her about damaging a vehicle— this too occurred outside of the home.  (Deft. Statement, paras. 47-48).  Therefore, Officer Midona did not breach Harney's privacy interest in

11

the home because authority to arrest occurred outside the home.  He further asserted his authority to arrest Muldoon — Harney's wife and co-habitant in the home — when he informed Harney of her arrest.  Berkowitz, 927 F.2d at1386.

As addressed in Berkowitz, Harney recognized and submitted to Officer Midona's authority when he went to inform his wife that she was under arrest, and therefore, it was reasonable for Officer Midona to enter the home to complete the Muldoon arrest.  See Id. Harney was informed of the arrests and then submitted to the officers' authority when he entered his home in-order-to inform his wife that she was under arrest.  (Deft Statement, paras. 49, 55). Muldoon then, in her own act of acquiescence to the arrest and submission to the officers' authority, proceeded into the kitchen to face the officers.  (Deft. Statement, para. 55.)  Muldoon did not object to the officers being in her home — additional evidence that she submitted to the officers' authority.  (Deft. Statement, par. 57.)

Therefore, there is no issue of material fact that Officer Midona had the consent of Harney to enter his home as the actions of Muldoon and Harney show they both recognized and submitted to Officer Midona's authority.

## V.    QUALIFIED IMMUNITY APPLIES TO ALL CLAIMS

Plaintiffs do not directly address Defendants' Qualified Immunity argument.  There is no issue of material fact that precludes the granting of summary judgment on the basis of qualified immunity.

## VI.    THE CITY IS ENTITLED TO SUMMARY JUDGMENT

Plaintiffs' sole claim against the City of Chicago is that of indemnification.   Thus, because Officer Midona is not liable to Plaintiffs in the instant case, neither can the City of Chicago be liable to Plaintiffs.  Therefore, the City of Chicago is entitled to summary judgment.

## CONCLUSION

WHEREFORE, Defendants, City of Chicago and Officer Joseph Midona, respectfully request this Honorable Court grant their Motion for Summary Judgment, dismiss the Second Amended Complaint with prejudice and grant any other relief this Court deems appropriate.

Respectfully submitted,

Mara S. Georges

12

Corporation Counsel– City of Chicago

BY: <u>//s/ James T. McGovern</u>
    JAMES T McGOVERN
    Special Litigation Counsel
    30 N. La Salle Street - Suite 1720
    Chicago, Illinois 60602
    (312) 744-8368