IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY L. HARNEY and PATRICIA A. MULDOON, | ) ) ) | |
| Plaintiffs, | ) ) | No. 07 C 2814 |
| v. | ) ) | Judge Joan H. Lefkow |
| CITY OF CHICAGO, CHICAGO POLICE OFFICER JOSEPH MIDONA, JR., and PAMELA DEVARELA, | ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In this section 1983 civil rights suit against the City of Chicago, Chicago Police Officer Joseph Midona, Jr., and Pamela DeVarela, plaintiffs Timothy Harney and Patricia Muldoon allege claims against Midona for false and unlawful arrest and seek indemnification from the City of Chicago on these claims. Plaintiffs also allege state law claims against DeVarela. Pending before the court is the City of Chicago's and Midona's motion for summary judgment. For the following reasons, their motion for summary judgment [#58] is granted.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine

1

issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**FACTS STATED IN A LIGHT FAVORABLE TO PLAINTIFFS**

**I.     The Parties' Reported Interactions Prior to May 2005**

Plaintiffs live in one unit of a three-unit condominium. DeVarela occupies another unit with Renata Pluharik. Plaintiffs and DeVarela have a tense relationship, and their disputes have at times led to the police being called. On April 17, 2004, DeVarela reported damage to her car mirror to the police, and Midona was dispatched to respond. DeVarela claimed plaintiffs had broken the mirror but, as she had no concrete proof, Midona stated in his police report that an unknown offender caused the damage. On September 21, 2004, Harney claimed one of DeVarela's dogs bit him. On September 23, 2004, DeVarela called Midona on his personal cell phone and informed him that plaintiffs chased her up the stairs of the building and pushed her when she tried to enter her unit. Midona then prepared a police report of this incident. Around this time, DeVarela, with Pluharik's help, installed a motion-activated video camera in the

2

shared three-car garage.

## II. Events Surrounding Plaintiffs' May 18, 2005 Arrests

On May 16, 2005, DeVarela called Midona on his cell phone. The next day, DeVarela met with Midona and a sergeant at DeVarela's husband's apartment. At some point before plaintiffs were arrested on May 18, 2005, DeVarela provided Midona with a videotape, which Midona viewed. DeVarela claimed the video showed plaintiffs damaging her car, specifically, stealing a valve cap and keying the rear bumper.

The videotape contained footage of two separate incidents that occurred in March 2005 in the garage plaintiffs, DeVarela, and another tenant of their building shared. The first clip, on March 6, 2005, depicts a man, identified as Harney, performing a series of tasks. Harney first examines his car's rear left tire, then briefly stops at DeVarela's car's rear left tire before squatting by her rear right tire and fiddling with it. He returns to his rear left tire, performs some work on it, and then turns to look at DeVarela's front left tire. After some time passes, Harney pulls his car partially out of the garage, changes the rear left tire, and drives away. Midona testified that the video showed "Mr. Harney removing the valve [cap] off of [DeVarela's] tire, letting out all the air in her vehicle's tire, and then putting that cap on his own car." Ex. 6 to Pl.'s L.R. 56.1 Stmt. at 23:19–21, hereinafter "Midona Dep." Although Midona admitted that he did not see Harney taking a valve cap or air coming out of DeVarela's tire on the video, he explained that DeVarela told him this was what happened. The second clip, on March 26, 2005, depicts a woman, identified as Muldoon, moving around the garage. Muldoon closes the garage door and walks past the rear of DeVarela's car with an object in her right hand. She then turns around, walking back toward her own car, with her right arm at her side, her wrist turned away

3

from her body. Once she passes DeVarela's car, she turns her wrist over. She then opens the garage door and walks out. Midona testified that the video showed "Ms. Muldoon coming into the garage, shutting the garage door, walking behind her vehicle – Ms. Devarela's vehicle – and using some kind of an instrument and scratching the back of her vehicle. Then she goes and opens the door and I believe just leaves the garage." *Id.* at 23:22–24:2. Midona also testified that DeVarela showed him the damage to her car, although he testified that he thought the damage was on the metal part of the trunk, not the rear bumper. On May 17, 2005, DeVarela obtained an estimate of the damage to her car from the keying.

On May 18, 2005, DeVarela again called Midona and advised him that she had obtained a damage estimate. Two detectives, Kurt Kourakis and Gloria Ekerman, were sent to DeVarela's apartment to investigate. Kourakis and Ekerman viewed the video footage, and DeVarela and Pluharik described what happened and told the detectives that the male and female appearing in the video were plaintiffs. Kourakis also inspected DeVarela's vehicle. At some point that day, DeVarela signed a criminal complaint against each of the plaintiffs.

After the detectives met with DeVarela and Pluharik, they joined Midona to effectuate plaintiffs' arrest, without a search warrant but believing they had probable cause to do so. Harney testified that he met Midona, Kourakis, and Eckerman on the front walkway of the condominium building. Midona told Harney that he was there to arrest him as there was tape showing him letting air out of DeVarela's tire. Midona also informed Harney that there was footage of Muldoon keying DeVarela's car and that the officers wanted to speak with her. After telling the officers that Muldoon was in bed and that he would go tell her, Harney entered the building and the officers followed him into plaintiffs' unit. Harney went to the bedroom to tell

Muldoon that the police wanted to talk to her, and Muldoon met them in the kitchen. After the officers told her they had a video of her keying DeVarela's car, they told her she was under arrest. At no point did Midona ask plaintiffs for their versions of the two incidents in question. Plaintiffs were taken out of their home to a squad car, where they sat for some time before being transported to the 18th District for processing.

Harney was charged with misdemeanor theft of property with a value under $300. Harney proceeded to trial on the charge. In finding the state did not sustain its burden of proving the crime beyond a reasonable doubt, the court stated its opinion that the video "shows a man working on his tire going over doing something or looking at a tire." Pl.'s Ex. 9 at 32:22–23.

Muldoon was charged with felony damage to property. She was held overnight and then released on her own recognizance after a judge found probable cause to require Muldoon to answer the charge. Muldoon proceeded to trial, and upon a motion for directed finding the court found Muldoon not guilty. In so finding, the court noted that "the quality of the video is such that you can't tell exactly what is going on in terms of any keying." Pl.'s Ex. 1 at 78:7–9.

## DISCUSSION

### I. False Arrest Claim

Midona argues that plaintiffs cannot prevail on their false arrest claim because he had probable cause to arrest based on DeVarela's account of the incidents, signed criminal complaints, video of the incidents, his personal observation of the damage to DeVarela's vehicle, and Kourakis's judgment that probable cause existed. Plaintiffs respond that the facts surrounding DeVarela's report made it unreasonable for Midona to arrest them, as a reasonable officer would have investigated further before making an arrest because her report was of

5

questionable reliability. They maintain further investigation was necessary because the plaintiffs and DeVarela did not get along, DeVarela's complaint was uncorroborated, the video does not demonstrate that the crimes they were charged with occurred, and there was an almost two-month delay between the incidents and DeVarela's complaint.

To prevail on their claim of false arrest under 42 U.S.C. § 1983, plaintiffs must establish the absence of probable cause for their arrests. *See Kelley* v. *Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Probable cause existed if "at the moment the arrest was made . . . the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [plaintiffs] had committed or [were] committing an offense." *Beck* v. *Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *see also Thompson* v. *Wagner*, 319 F.3d 931, 934 (7th Cir. 2003). Probable cause is evaluated "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* – seeing what he saw, hearing what he heard." *Mahoney* v. *Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992). "[P]robable cause demands even less than probability; it requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Woods* v. *City of Chi.*, 234 F.3d 979, 996 (7th Cir. 2000) (citations omitted) (internal quotation marks omitted); *see also Maryland* v. *Pringle*, 540 U.S. 366, 370–71, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.").

Determining whether probable cause exists is necessarily a fact-intensive inquiry. *Jones*

6

*by Jones* v. *Webb*, 45 F.3d 178, 180 (7th Cir. 1995). Consequently, summary judgment is inappropriate where material facts regarding the existence of probable cause are in dispute. *See id.* ("Whether an officer had probable cause to make an arrest generally will present a question for the jury, although the court can decide it when the material facts are not disputed."); *Schertz* v. *Waupaca County*, 875 F.3d 578, 582 (7th Cir. 1989) ("While Section 1983 claims presenting the question of probable cause are generally inappropriate for disposition on summary judgment, this is true only where there is room for a difference of opinion.").

The Seventh Circuit has "consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Id.* Thus, Midona would have ordinarily been entitled to rely solely on DeVarela's complaint to establish probable cause unless he had reason to be suspicious. *See Woods*, 234 F.3d at 996; *Guzzell* v. *Hiller*, 223 F.3d 518, 519–20 (7th Cir. 2000) ("Police are entitled to base an arrest on a citizen complaint, whether of a victim (as here) or a nonvictim witness, without investigating the truthfulness of the complaint, unless–this turns out to be an important qualification–they have reason to believe it's fishy."). Here, the circumstances surrounding DeVarela's report regarding both plaintiffs were suspicious and warranted further investigation. DeVarela had a known track record of minor incidents with plaintiffs, calling into question her motivations for reporting these incidents. *See Hebron* v. *Touhy*, 18 F.3d 421, 423 (7th Cir. 1994) ("[Defendants] knew that the tenants were being evicted, and the significant chance that they bore a grudge against their landlords would have made it unreasonable–and therefore unconstitutional–to arrest the landlords on the tenants' mere say-so."). *But see Gerald M.* v. *Conneely*, 858 F.2d 378, 381 (7th Cir. 1988) ("We are not unaware that a person who dislikes another has a motive to lie to the

7

detriment of that person, but motive without at least a shred of evidence suggesting that the motive was acted on does not taint a statement."). Adding to this, the two-month delay in DeVarela's reporting of the incidents would have made further investigation prudent, particularly as DeVarela did not have a good reason for the delay. *See Sheik-Abdi* v. *McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994) ("Where there is a lapse of time between the alleged lawbreaking and the arrest, . . . we find it more likely that some type of investigation–for example, the questioning of witnesses–will be appropriate."); *Gramenos* v. *Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986) ("A 'prudent' officer may balk if the person claiming to be an eyewitness strolls into the police station and describes a crime from long ago . . . ."); *cf. Woods*, 234 F.3d at 997 (discounting a three-day delay in reporting because of "an apparently credible explanation" for the delay). *But see Spiegel* v. *Cortese*, 196 F.3d 717, 724 (7th Cir. 1999) (finding that one-month delay in reporting did not require an officer to take further investigative steps).

In any event, the question remains whether Midona had probable cause. While Midona claims he had complaints signed by DeVarela before he arrested plaintiffs, Muldoon testified that Ekerman requested blank complaint forms from Midona for DeVarela to sign *after* plaintiffs were arrested. As the court must construe the facts in the light most favorable to plaintiffs, it must treat DeVarela as having signed complaint forms against Harney and Muldoon only after they had been arrested. Thus, Midona cannot rely on the fact that DeVarela signed a complaint to support a finding of probable cause. Although Kourakis believed there was probable cause to arrest plaintiffs, his belief is immaterial; only the facts and circumstances underlying his belief could affect the probable cause determination. *Cf. Tangwall* v. *Stuckey*, 135 F.3d 510, 517 (7th

8

Cir. 1998) (an officer may rely on the facts and circumstances within an agency's collective knowledge to establish probable cause). Thus, the only additional pieces of evidence the court will consider in determining whether Midona had probable cause to arrest either plaintiff are the video of the two incidents and Midona's personal observation of DeVarela's vehicle.[1] Although Midona claims that what he saw corroborated DeVarela's report, his subjective belief is irrelevant to a determination of probable cause. What matters is whether a reasonable person in Midona's shoes would have believed an offense had been committed. *See Mahoney*, 976 F.2d at 1057.

### A. Harney

The parties disagree about what the video shows Harney doing in the garage on March 6, 2005. The footage does not clearly show a valve cap being removed or Harney letting air out of one of DeVarela's car's tires, although he does spend considerable time apparently fiddling with two of her tires and appears to drop something from one hand to the other after walking away from the second tire. Still, the court is not persuaded that no issue of fact exists as to whether Harney deflated tires or stole a valve cap. Reasonable people could disagree. Thus, because the circumstances surrounding DeVarela's complaint would have aroused the suspicion of a

---

[1] Although plaintiffs and defendants disagree as to when exactly Midona viewed the videotape, the fact that Midona viewed the tape prior to arresting plaintiffs is not in dispute. Plaintiffs attempt to create a dispute by arguing that Midona did not view the video because he viewed and inventoried one video containing the footage of both incidents while the footage produced in this suit is contained on two separate discs. The defendants admit that the entirety of the tape does include Harney changing his tire and that Midona did not see this portion, but this does not affect the fact that Midona saw the portion of the video material to this suit. The court is hesitant to conclude that the video submitted by defendants has been fraudulently altered and does not find that the formatting of the video clips calls into the doubt the fact that Midona viewed the footage. The other facts plaintiffs attempt to use to show Midona did not view the tape relate to interpretation of what is shown on the tape, not whether the tape was actually viewed.

9

reasonable officer and there is an issue of fact as to the contents of the video, the court cannot conclude that probable cause existed as a matter of law.

### B. Muldoon

Whether Midona had probable cause to arrest Muldoon after watching the video of the keying incident presents a closer question. The parties dispute whether the video shows Muldoon keying Devarela's car's rear bumper; plaintiffs maintain that it merely shows a woman walking behind a car. It is more than that, as Muldoon saw damage to the car as well. Still, reasonable people could differ as to what the video depicts Muldoon doing, making resolution of the question inappropriate for summary judgment. Thus, because a reasonable officer would not have relied on DeVarela's complaint alone, and because there is an issue of fact as to what the video depicts, the court cannot conclude that Midona had probable cause to arrest as a matter of law.

## II. Unlawful Arrest Claim

The Fourth Amendment protects against warrantless searches and seizures that intrude on an individual's reasonable expectation of privacy. *See Katz* v. *United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). "Police officers may constitutionally arrest an individual in a public place (*e.g.*, outside) without a warrant, if they have probable cause." *Sparing* v. *Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) (citing *United States* v. *Watson*, 423 U.S. 411, 417–24, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976)). They, however, "may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause." *Id.* (citing *Payton* v. *New York*, 445 U.S. 573, 585–90, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)).

### A. Harney

Midona contends that Harney was arrested outside his home in a public place and so could be arrested without a warrant. Plaintiffs maintain that Harney was within the curtilage of his property when Midona told him he was under arrest, thus affording him the same protections he would have if in his home. The Fourth Amendment's protections of the home do generally extend to the curtilage. *Oliver* v. *United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984).[2] The Seventh Circuit, however, has held that an individual does not have a reasonable expectation of privacy in common areas of multiple dwelling buildings, even where access is controlled. *See, e.g.*, *United States* v. *Villegas*, 495 F.3d 761, 767–78 (7th Cir. 2007); *United States* v. *Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991).

Plaintiffs have admitted that Midona told Harney he was under arrest while Harney was on the front walkway of the condominium building. Although it is unclear whether the officers were inside or outside the gate to the walkway, their location or how they got there is immaterial. The Fourth Amendment does not protect Harney while he was standing in a walkway leading to the condominium building, a walkway that, for example, any visitor to the building would use to enter and exit or the mail carrier would use to deliver mail. *See Villegas*, 495 F.3d at 767–78. Because this area was exposed to the public and used by others residing in the building, Harney cannot be said to have had a reasonable expectation of privacy there. *See id.*; *Concepcion*, 942 F.2d at 1172. Thus, Midona did not need a warrant to arrest Harney on the walkway in front

---

[2] To determine whether an area is part of the curtilage and thus entitled to a reasonable expectation of privacy, a court should consider "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States* v. *Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987).

of the condominium building if he had probable cause to arrest. Because there is a dispute as to whether Midona had probable cause, however, the court cannot conclude that Midona is entitled to summary judgment on Harney's warrantless arrest claim.

### B. Muldoon

To arrest Muldoon, Midona crossed the threshold of plaintiffs' home. If Midona had probable cause to arrest Muldoon, her warrantless arrest would be valid only if either she or Harney consented to the officers' presence in their home. *See Sparing*, 266 F.3d at 688. Whether they consented to the officers' entry into their home is a question of fact to be determined based on the totality of the circumstances. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). "Consent may be manifested in a non-verbal as well as a verbal manner." *United States* v. *Walls*, 225 F.3d 858, 863 (7th Cir. 2000). In determining whether consent was freely given, the court should consider

> (1) the person's age, intelligence, and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent.

*United States* v. *McGraw*, 571 F.3d 624, 628–29 (7th Cir. 2009) (citing *United States* v. *Raibley*, 243 F.3d 1069, 1075–76 (7th Cir. 2001)).

The facts in this situation are closely analogous to those presented in *Gerald M* v. *Conneely*. 858 F.2d 378. In *Gerald M*, an officer came to the door and asked to speak with a woman's sons. *Id.* at 384. The woman told the officer she would get them and that he should wait there. *Id.* Despite this instruction, the officer stepped into the home, where he proceeded to have a conversation with the woman and her sons. *Id.* No one protested his presence in the

house. *Id.* The Seventh Circuit found that, considering the totality of the circumstances, the woman voluntarily consented to the officer's presence, even though she had initially told him to wait outside. *Id.* at 384–85. In coming to this conclusion, the court noted that she subsequently did not protest the officer's entry into her home but instead acquiesced to his presence; indeed, she did not act in any way indicating she disapproved of his presence, and the officer did not threaten or coerce her but instead only stated he wanted to speak with her boys. *Id.*

Here, Harney was informed by the officers that he was under arrest and that the officers wished to speak with Muldoon about the keying incident while standing on the walkway to his building's entrance. Harney told the officers that Muldoon was in bed but that he would go get her. He did not tell the officers to wait outside. Although Harney testified that he was not aware that the officers followed him inside until he came out of the bedroom with Muldoon, neither he nor Muldoon indicated to the officers that there was an issue with their presence in the unit. Muldoon testified she tried to call an attorney, but there is no indication that her attempt to call an attorney related to the officers' presence in her home without a warrant and, in fact, she admitted she did not raise any objections to the officers' being there. Following the Seventh Circuit's reasoning in *Gerald M*, the court finds that, considering the totality of the circumstances, plaintiffs' conduct does not amount to mere acquiescence, which is not ordinarily enough to show voluntary consent, *see Bumper* v. *North Carolina*, 391 U.S. 543, 548–49, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968), but rather to implied consent to the officers' presence in their home. *See Gerald M*, 858 F.2d at 384–85. Because the court has found that there is a genuine issue of fact regarding whether Midona had probable cause to arrest Muldoon, however, Midona's motion for summary judgment will be denied on Muldoon's unlawful arrest claim.

**III.    Qualified Immunity**

Midona argues that, even if probable cause did not exist, he is entitled to qualified immunity because he had arguable probable cause to arrest plaintiffs. "Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an 'additional layer of protection against civil liability' if a reviewing court finds that they did not have probable cause." *Williams* v. *Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001) (citing *Hughes* v. *Meyer*, 880 F.2d 967, 970 (7th Cir. 1989)). Qualified immunity will shield Midona from liability "if a reasonable officer could have believed [plaintiffs' arrests] to be lawful, in light of clearly established law and the information [Midona] possessed." *Hunter* v. *Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1989) (quoting *Anderson* v. *Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)) (internal quotation marks omitted). As the Seventh Circuit has stated, "[i]f a case involves a question of whether probable cause existed to support an officer's actions, the case should *not* be permitted to go to trial if there is any reasonable basis to conclude that probable cause existed." *Humphrey* v. *Staszak*, 148 F.3d 719, 727 (7th Cir. 1998) (citations omitted) (internal quotation marks omitted).

**A.    Harney**

It is undisputed that the right to be free from arrest without probable cause was clearly established at the time of Harney's arrest. Thus, the only issue to address is whether a reasonable officer *could* have believed that probable cause existed. The court's finding that the evidence is open to interpretation does not preclude a finding of qualified immunity, as one could conclude from the video that Harney stole DeVarela's valve cap or that he was only

examining her tires for comparison purposes. Because either interpretation is reasonable, the court finds that Midona is entitled to qualified immunity on Harney's false arrest claim. *See id.* at 725 ("The court should ask if the officer acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years after the fact." (citing *Hunter*, 502 U.S. at 228)); *Jones* v. *City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) ("[O]nly if no reasonable officer could have mistakenly believed that he had probable cause to arrest is the immunity forfeited."). Similarly, because the court finds that Harney's warrantless arrest would have been valid if Midona had probable cause, and because Midona is entitled to qualified immunity as to probable cause, he is similarly protected from liability for Harney's warrantless arrest. Thus, Midona's motion for summary judgment on Harney's claims will be granted.

      **B.**    **Muldoon**

As a reasonable officer could have believed that the video depicted Muldoon keying DeVarela's car, providing the officer with probable cause to arrest her in light of the other undisputed facts and circumstances known to Midona at the time of arrest, Midona is also entitled to qualified immunity on Muldoon's false arrest claim. This further dictates a finding of immunity with respect to Muldoon's warrantless arrest claim, as the court has found that the undisputed facts surrounding the officers' presence in plaintiffs' unit establish that plaintiffs consented to their presence. Thus, Midona's motion for summary judgment on Muldoon's claims will be granted.

15

**IV.    Indemnification**

The sole claim against the City of Chicago is for indemnification.  As the court has granted summary judgment in Midona's favor on all claims, the City of Chicago is also entitled to summary judgment.

**CONCLUSION AND ORDER**

For the foregoing reasons, Midona's and the City of Chicago's motion for summary judgment [#58] is granted.  The clerk is directed to enter judgment in favor of Midona and the City of Chicago.  Plaintiffs and DeVarela agree that plaintiffs' pending state law claims should be heard in state court.  These claims are dismissed without prejudice to refiling in state court.


Dated: February 10, 2010                Enter:  _____

                                                JOAN HUMPHREY LEFKOW
                                                United States District Judge